321-0330 Consolidated with 321-0331 The People of the State of Illinois Appellee by Laura Bailon v. Devon D. Lesley Appellant by Joel A. Flaxman Are both sides ready to proceed? Yes, Your Honor. All rise. Mr. Flaxman, you may proceed. Thank you. May it please the Court, Counsel. This is the second of four cases scheduled for argument today that raise common issues about the Certificate of Innocence statute. I know two of the justices who are in the courtroom now have heard me before, so I will do my best not to repeat, but I do apologize. I do have to say some things again. In this case, Mr. Lesley was convicted of two separate offenses of AUUW in two separate indictments. Both offenses were under a statute later held to be unconstitutional. The Illinois Supreme Court in the Chenal case addressed a similar situation, and the language they used was that the defendant pled guilty to something that was never a crime. The other language they used that we rely on is that the plea in the Chenal case, just like here, was defective. In one of the cases for Mr. Lesley, there were three charges in the indictment. The two charges against Mr. Lesley were both unconstitutional AUUWs. There was a third charge of possession of a controlled substance against another man. In the second case against Mr. Lesley, there were two charges, the unconstitutional AUUW and a possession of a firearm by a street gang member. We acknowledge that offense is something that has recently been upheld by the Illinois Supreme Court. We're not claiming that that offense is also unconstitutional. Maybe I'll pause. That's why now our alarms are going off. Yes, same Tuesday, different time. Thank you. Justice Brennan, can you see the entire screen from where you're sitting? Yes. It only goes off once, right? It's not every hour. It's the longest two minutes of your life. It's really two minutes. If we were really in the spirit, we'd get under the tables. I couldn't get the Christmas music to shut off outside my chambers when I was in the downtown corner. Yeah, I got a little bit of that back from them. All right. I believe we can restart the time. Mr. Flaxman, if you wish to continue. Thank you. I think I left off just describing the two charges Mr. Leslie was convicted of in two separate cases. He later filed motions to vacate those convictions. And under Aguilar and the cases that followed, the convictions were vacated as void. Then Mr. Leslie sought certificates of innocence. They were denied and we're here on an appeal from the denial of those petitions for certificate of innocence. The certificate of innocence statute has four elements for the court to enter a certificate of innocence. The first two are not disputed. There's no dispute that Mr. Leslie was convicted of a felony and it was vacated in each case. There's no dispute that the convictions were vacated. That's the second element. The disputed elements first are subsection G3 of the statute, which requires Mr. Leslie to show that he's innocent of the offenses charged in the indictment or the information. The key question is what the offenses refer to. It's our position that the court resolve that question in the People v. McClinton case from 2018 when the court said that the other sections of the certificate of innocence statute limit the court's consideration to the offenses of incarceration. McClinton was a G4 case though, so anything along those lines would be dicta for the most part as it relates to the G3 question. Would that not be a fair characterization? I will leave it to the court on how to interpret its ruling. The way I read McClinton is that in paragraph 15 it held that the court's consideration is limited by subsection B. Let me ask a different question, a statutory question as it relates to that argument. As I understand the argument, what you're just saying is that you should only have to prove your innocence as it relates to the offense for which you went to the Department of Corrections. Exactly. All right. Well, let me ask you to look at G3 specifically and explain to me why they included the word misdemeanor in G3 because obviously you cannot go to the penitentiary for a misdemeanor. So the inclusion of misdemeanor in G3 leads me to conclude that they meant what they said and that you have to prove your innocence as to all the charges and not just the charge you went to the Department of Corrections for. So what Your Honor is referring to is the second part of G3. That provision uses a disjunctive or, and we are not relying on that second part. The way I would read that would be that I think it almost could apply to hypothetical offenses that the petitioner's acts or omissions, just looking at the acts or omissions, they themselves do not constitute a felony or a misdemeanor. They're no kind of offense at all. But that's not the provision we're relying on. What we're relying on is the first part of G3, which requires proof that the petitioner is innocent, of the offenses charged. But what if a misdemeanor is charged? I mean, there's no shortage of cases that charge misdemeanors and felonies together. So the question is if an indictment includes felonies and misdemeanors. Well, the indictment would, but the combined charging instruments for the offense would, right? I mean, if there's an information that includes a misdemeanor and later there's other charges. I mean, I think there's some complicated questions about multiple charging instruments. I only ask that because the fact that they say you have to be innocent of all the charges and that they include misdemeanors suggests to me the possibility that they meant what they said, that you have to be innocent of all the charges. Well, I think what I'm suggesting is that the focus of that second part of the sentence is not on charges. The focus is on acts or omissions. Information did not constitute a misdemeanor. Right, the acts or omissions charged in the indictment or information. So to satisfy that part of the paragraph, I think that it's not a paragraph, but the last section that I thought about and I don't know of any, I think that there's dicta in a recent opinion that mentions it, but doesn't. There's nothing. I'm just thinking out loud. And I appreciate that. You don't have to keep talking. It's just a question. I better answer the court's questions. And my answer is that we're not using that portion of subsection G3. I'm just not so sure they can be separated in the way you hope. But let's continue because that's perhaps not dispositive. Okay. What we're relying on is that first part of the sentence, which is that the petitioner is innocent of the offenses charged in the indictment or information. And as the court, as you started your question with, our position is that that's limited to the offenses of incarceration. And whether the court wants to call it dicta or a holding, the reasoning in the McClinton case for applying that rule is that subsection B of the statute limits the consideration in that way. Subsection B defines what a petition for a certificate of innocence must include. And it says that the petition shall request a certificate of innocence, finding petitioner was innocent of all offenses for which he or she was incarcerated. So it's a mandatory limitation on the petitioner to only request relief on the offenses for which he or she was incarcerated. But then G tells you what you must prove. Well, that's the state's argument. It's our position that. It's also what the statute says. I disagree about what the statute says. And why? Because, well, the statute doesn't say all offenses so that the word all is not in there. What the canons of construction tell us is that we have to read the subsections of a statute all together. We don't read subsection G3 in isolation. And reading them all together, the limitation in subsection B to offenses for which he or she was incarcerated limits subsection G3. That limitation is repeated again in subsection H when the statute defines what the court can enter on a certificate of innocence. So we know that the request is limited to the offense of incarceration. We know that the order from the court is limited to offenses of incarceration. It wouldn't make any sense to then have an extra requirement under the elements of the statute. The best example I can think of in terms of how we use language would be that if you go to a restaurant and the menu has multiple entrees on it, the waiter comes and I order my entree, I order a hamburger, my wife orders a steak. So we've ordered two of the entrees. There's 10, 15 other entrees we didn't order. When the waiter comes a few minutes later and says the entrees will be right up, what the waiter means is the two you ordered are coming. He doesn't mean every single entree on the menu is going to be brought to your table. The state's argument is that that is what the waiter means, that he means every single entree on the menu is going to be brought to your table, and he says the entrees. It's our position that that's not consistent with the language of the statute that limits the consideration to the offenses of incarceration. In addition to subsections B and H, that limitation is repeated in the title of the statute that refers to a certificate of innocence that the petitioner was innocent of all offenses for which he or she was incarcerated. The first section focuses on imprisonment. There's other portions of the statute we've cited in our brief which are also focused on imprisonment. Mr. Flaxman, let me ask you this. Let's assume the court were not to interpret the statute as you're asking us to in terms of limiting the requirement to prove innocence to the charges you're incarcerated for. Accepting that for a moment, what about this consolidated plea aspect? What role does a global or consolidated plea play in applying this statute? We have 12 CF 5 where all the charges are unconstitutional, and then it's consolidated and pled with, not consolidated, but combined and pled together in 12 CF 627 where arguably the defendant cannot show he was innocent of firearm by a gang member. The fact that they're all pled together, does that somehow put you out of the box in terms of a certificate for 12 CF 5? It doesn't. Our position is if the court disagrees with me about the limitation, then Mr. Leslie gets a split decision. He can prove he's innocent of all charges in one case. He cannot prove he's innocent of all charges in the other case. And the fact that he pleaded guilty to them on the same day does not have anything of importance to the interpretation of the statute. The only, there's nothing, the state doesn't point to any language in the statute for combining those indictments under the law of combined indictments, which is 725 ILCS 5111-4A. They couldn't be combined because they were offenses that were committed on different days. They weren't part of the same transaction. The only support the state has for telling the court that they have to be considered together is this rumination by Justice Doherty about some, I think, frankly interesting open questions under the certificate of innocence statute, but not, he didn't even suggest a resolution to that. So I think the resolution is these cases are separate. We talked about this in the first case, and one of the questions was about the incarceration for those two cases. In Mr. Leslie's case, he got consecutive sentences of one year each. So the pleas were entered in the same hearing, but those offenses are separate. The incarcerations were separate. There's no basis under the statute or anything else for combining them. And I think that, you know, it's easy to think about absurd results to say that a petitioner who's, we can consider somebody who's an exoneree who does decades in prison, and if they happen to have some other offense that had nothing to do with the charge for which they were wrongfully incarcerated, I think it would be absurd to say that just because they have this other offense, we should bring it into the certificate of innocence proceedings when it's a separate indictment, a separate date. I have some questions. Maybe Justice Hennel will repeat, but ask the state, would you seek to combine them, say, consider them together if the guilty plea were across the hall or in another county? And the state agreed that those shouldn't be considered, that the state's position is that there's something significant about pleading guilty at the same time. We just don't see anything in the statute that says that. Perhaps the other side of that coin, you filed a joint certificate of innocence request. You didn't separate them. So that's right. And I think that's, I think if the court looks at the proceedings, the arguments were mirrored in the cases, but in the briefing and in the argument, the court did treat them separately. And this, the rule that the state's asking the court to apply to combine them isn't something the state raised in the trial court. It's a new argument here. And as I said, it doesn't have any support in the statute. The separate cases are separate. I see that I'm running out of time. The only other issue is under G-4. Can we allow you to talk about G-4 in rebuttal? Okay. Does the panel have any additional questions? Can you cite? Counsel, you said that unless they're separate facts, the indictments cannot be charged in the same indictment? And I said it very quickly. 725 ILCS 5-111-4A. 4A. And so that says that offenses can be combined in the same charging document if they're based on the same act or they're based on the same transaction. So the state's position is that there's some kind of combination through a guilty plea, but I don't think that the state will dispute that they couldn't have been charged originally in the same charging document. Justice Peterson? I have no questions. All right. Mr. Flaxman, you'll have an opportunity in rebuttal. Thank you. Is it Byland? Byland. Ms. Byland. Sorry. You may proceed. Thank you, Mr. Court. Counsel, Laura Byland on behalf of the people. The people ask this Court to affirm the denial of the petitions for certificate of innocence. Regarding the forfeiture argument, the people actually did argue below that the pleas were taken together so it should be considered as a whole. That's in the 1331 Record Act, D-101. And in any event, this Court can't affirm on any basis in the record. This is a mistake appeal where forfeiture would apply, but instead this Court can't affirm on any basis in the record. There's four elements a petitioner must plead and prove to obtain a certificate of innocence, and the burden is on the petitioner to prove all four by preponderance of the evidence. Here, the petitioner did not meet his burden on two elements, P3 and G4. Under element P3, a petitioner is required to prove that he was innocent of the offenses charged in the indictment. As discussed in Warner, Brown, and Hilton, that language includes charges that are not crossed under a plea agreement. The McClinton case is distinguishable because it analyzed a G4 issue, not a G3 issue. It did not actually analyze whether a petitioner must prove innocence of not cross charges, as that issue wasn't raised in that case. Warner, Brown, and Hilton alone resolve the pre-21, 13, and 30 case. For the pre-21, 13, and 31 case on G3, it's more of an open question. So the concurring justice in Brown noted that whether G3's language requires a petitioner to prove their innocence of the charges in both indictments in a joint plea scenario is an open question. The people's position is that when a defendant pleads guilty to two cases together as a package deal at a single hearing for a joint resolution, the cases start separately, but then both parties choose to resolve them together, treating them as one combined package deal for the purposes of a package plea agreement. If I may, it seems to me you're almost making a benefit, and I know one of those cases talks about this, you're almost making a benefit of the bargain argument, which I find compelling, except there's nothing to support that consideration in the Certificate of Innocence statute. The Certificate of Innocence statute is focusing on what you were charged with in the indictment, not what you pled to at the time of the sentence. Yes, so the people's position is that by treating them together, that means that the language of the indictment is ambiguous because what indictment? You treated them together as a package deal. So the people aren't arguing that this language is perfectly clear as it is for the first case that's resolved by Warner Brown and Hilton, but the people believe the language is ambiguous when, due to the benefit of your bargain, you treated it as a single entity indictment for a package deal, that that creates the ambiguity. One, if the court were to find the language ambiguous, the court would look for the legislative intent as expressed in the statute, and Warner Brown and Hilton discuss the legislative intent as expressed in Gene III, which is to limit claims for compensation to petitioners who have shown their innocence in all charges. That's in order to avoid the absurd result of compensating people who could have been arrested for more serious felon charges if they had not pled guilty to avoid ones that were later recognized as void ad monitio. Avoiding that result applies the same whether a plea agreement resolves one case or is a package deal and resolves two cases. So the people's position is that a petitioner must prove their innocence in the charges in both indictments if there's a combined plea. And here there was a combined plea. The combined nature of the plea, it was, there were consecutive sentences, but there were consecutive sentences of one year plus one year, which was a total of two years. Well, that was less than the mandatory minimum three years that would have been possible for the valid, charged offense of unlawful possession of a weapon by a security member. And that could have been up to 10 years imprisonment on that case. So that's all indicative of a package deal. Concerning element 4, under Washington, whether a petitioner voluntarily caused for, or put above their conviction by pleading guilty is determined on a case-by-case basis, looking at the totality of the circumstances. Washington states that the plain meaning of voluntary is resulting from free choice without compulsion or solicitation. Here, the petitioner wasn't compelled to enter into the combined plea. He could have chosen not to plead guilty and instead proceeded to trial and challenge the constitutionality of the statute, but he didn't, and the people know that this plea was in 2012. The Flaherty case was not a case from the U.S. Supreme Court, came out in 2008 and 2010, concerning the Second Amendment and use of firearms for self-defense. By 2012, when the plea occurred, defendants in Illinois cases had started raising constitutional challenges to the statute. In multiple cases that are discussed at paragraph 18 of the Aguilar piece, instead of channeling the statute, defendants accepted the plea combined plea to a total of two years on two void, later declared void, AAUW cases in order to not face three to 10 years unlawful possession of a firearm by a Supreme Court gang member. And he challenged the constitutionality of the AAUW statute. There was, the state could have amended the charge in the one case that didn't have a valid offense to either charge life of a void, which is currently a valid offense or unlawful possession of a firearm by a Supreme Court gang member. Let me ask you this question, if I may. What would the state's position be if all we had was one case with one count and unconstitutional AAUW? Would the state be taking the position that because the defendant pled to an unconstitutional void ab initio charge, he's ineligible for a certificate of innocence because he pled? Would that be the state's position? So the state would actually have to take a position on that circumstance in this case, just because Washington specifically says that the case is supposed to be determined on a case-by-case basis. Well, it does, but we will have to decide this. And I'm asking you, it seems to me to use a non-legal term, somewhat macabre, to suggest that we can bar a certificate of innocence because the defendant pled to a void ab initio offense. It just seems problematic. I understand your honor. Well, the issue here is voluntary. Voluntarily files are brought about their conviction. And that is where the benefit does come into play. That would distinguish from that case. As voluntary means resulting in free choice without compulsion of solicitation here. There's an indication of lack of compulsion because he was in 2012. Aguilar came out in September of 2013. At that time, Petitioner never sought to file a post-conviction petition. He never did seek to withdraw his plea. It was— And the state didn't seek or choose to dismiss the charges, notwithstanding Aguilar either. The state persisted in this being a valid— In this plea, too. I don't know that the state would have been able to unilaterally void the plea.  I mean, you're blaming the defendant for pleading because this specter was out there that these might be improper charges. But the state persisted in these charges, notwithstanding the specter. I'm not casting aspersions. I'm just saying what's good for the goose is good for the gander. That legal doctrine. Yes. Yes. The state did, but the state also then, once he did make his conviction, and it was after the statute of limitations passed after, the state gives up the ability to obtain a conviction on the unlawful possession of a firearm by a street gang member of facts or to amend the other challenges to charge for it offenses, which would have been supported on a factual basis. So there's— No one can go back in time and have the case filed. Aguilar was voted out in 2012. No. But there is a lack of compulsion. So if there's no benefit, that might be a situation where there's compulsion because why else would he plead guilty? But here, where if he becomes a state, he's just going to get faced with amending of the charges to become valid charges, including a possibly higher mandatory minimum of three to ten years' charge in one case, and the ADA doesn't quite outvote. That just goes to a lack of compulsion under the specific facts and circumstances of this case. So that's why the people believe that Washington limited the—it's not a flat rule either way under Washington. Are there any further questions on elementary courts? No, thank you. If there are no further questions, the people have asked that this court affirm the denial of the Petitions for Certificate of Innocence. Thank you. Mr. Claxton, do you wish to respond? I do want to just address G-4 because I didn't have a chance to. The Supreme Court's opinion in Washington endorsed this court's ruling in McClinton, the ruling that a petitioner cannot voluntarily cause or bring about a conviction under an unconstitutional statute. And the state says that McClinton is somehow different because there was a guilty plea, but there's nothing in the Certificate of Innocence Act—I'm sorry, statute—that says anything about guilty pleas. That's something the Supreme Court mentioned in Washington. Under contract principles, we say that a party can't voluntarily enter into a void contract. I think pleading guilty to a void offense is a void contract. And to the point that Mr. Leslie could have challenged the conviction or challenged the statute based on Aguilar, I think, Justice Brennan, rightfully, you brought that back to the state and said that, you know, the state also could have known or could have somehow predicted Aguilar and proceeded in a different way. Another contract principle we talk about is misapprehension of law or fact. And I think a defendant who pleads guilty to a statute that's unconstitutional has that kind of misapprehension, which makes that guilty plea involuntary. I started when I came up to here first with the People v. Chennault case, which talks about a plea like that as defective. And when there's a defective plea, it's not voluntary. And under G-4, it doesn't bar the certificate of innocence. The only other point I wanted to leave the court with is under G-3, the fact that the state chose to dismiss the other charges in each case by Nolley-Prosecki really has an import, that that means the state chose, voluntarily decided not to pursue those charges. The Supreme Court's opinion in Palmer says that the proper focus of G-3 are the allegations as charged and prosecuted in petitioner's criminal trial. So consistent with Palmer, it's our position that the state can't oppose the certificate based on these charges the state voluntarily abandoned at the time of the guilty plea. Unless there are other questions, I'll conclude there and ask the court to vacate the judgment below and remand for entry of the certificate of innocence. The court thanks both sides for spirited arguments. We will take the matter under advisement and render an opinion in due course. Thank you very much.